# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

**CHARLES HARVEY PINER**                                        **PLAINTIFF**

**VS.**                                         **CIVIL ACTION NO. 3:10CV66-LRA**

**CAPTAIN EDDIE THOMPSON; SHERIFF
RONNIE PENNINGTON; LIEUTENANT
ROBERT ANDREWS; LIEUTENANT JIM
SPEARS; LIEUTENANT BOUNDS; OFFICER
BANGS; OFFICER GREEN; OFFICER NANCY
GRAVES; and OFFICER LURA**                     **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

THIS cause is before the Court on Defendants Captain Eddie Thompson, Sheriff Ronnie Pennington, Lieutenant Robert Andrews, Lieutenant Jim Spears, Lieutenant Al Bounds, Deputy Chris Banes, and Deputy Barbara Green's Motion for Summary Judgment. For the reasons discussed below, Defendants' motion shall be granted.

## Background and Procedural History

Plaintiff, acting *pro se* and filing *in forma pauperis*, filed this Complaint pursuant to 42 U.S.C. § 1983, on February 1, 2010. Plaintiff's allegations arise out of events which occurred while he was incarcerated at the Rankin County Detention Facility between June 21, 2009, and June 8, 2010, after he was convicted of exploitation of a minor child.

Plaintiff appeared before the undersigned United States Magistrate Judge on November 21, 2011, at the Federal Courthouse in Jackson, Mississippi, for an omnibus hearing. The Court scheduled this hearing for various pretrial purposes, including a *Spears* hearing. The hearing was conducted in an attempt to insure the just, speedy,

and inexpensive determination of this *pro se* prisoner litigation and to determine whether or not Plaintiff's claims were supported by a factual or legal basis.

In his Complaint, Plaintiff alleges he is a "victim of circumstance on technology [and] medicine." [ECF No. 1, p.5]. Plaintiff asserts that a device that was somehow implanted into his body has caused him "pain by receiving heart attacks from analysis works." [ECF No.1, p.6]. According to Plaintiff, these events somehow involve "people of 800 feet human-to-human interface." [ECF No.1, p.6]. Human-to-human interface somehow implanted a device into his body that allowed certain unknown individuals to lower his heart rate; he was sexually assaulted in his sleep as a result, according to his testimony.

In addition to being tortured by heart attacks, Plaintiff asserts the implanted device has caused him to be assaulted, raped, and sexually harassed. [ECF No.1, p. 4]. In a subsequent pleading to this Court, Plaintiff clarified this claim as follows:

> If, Darla Palmer had I Charles Harvey Piner setup, by being sexually assultted [sic], and raped by one Michael McLaurance in, and at Rankin Co. Jail, POD #W-207, cell #219, on or about the 2nd day of March, 2010! A [sic] example of the nature of my complaints. Please don't let the people torsure [sic] me! Torsure [sic] no more! Sense [sic] 1964 my brith [sic] up to now, I sufferd [sic] "pain," through "heart attacks" for to [sic] "long," "raped" to [sic] "long" by men! I do hate queer men, all men. Because of this homosexual stuff! But, on the other hand I do in fact love the ladies!

[ECF No. 11, p. 3].

In his original Complaint, Plaintiff filed suit against "Politic Reform Law," "Public Corporate File," "Adult Entertainment," and the "Federal US Supreme Courts." [ECF No.1, p. 1]. On May 27, 2010, Plaintiff amended his Complaint to add Captain Eddie Thompson, Sheriff Ronnie Pennington, Lieutenant Robert

2

Andrews, Lieutenant Jim Spears, Lieutenant Al Bounds, Deputy Chris Banes, Deputy Barbara Green, Officer Nancy Graves, and Officer Lura as defendants. Officers Graves and Lura have not been served with summons. The original Defendants were dismissed on July 15, 2010.

When Plaintiff appeared at his omnibus hearing, he elaborated on the specific allegations against each of the Defendants as follows:

1) **Captain Eddie Thompson**

Q. All right. You filed a complaint against Eddie Thompson.

A. What happened there is due to this and the circumstance of back in the eighties when I had signed a contract with Danny Owens and adult entertainment, they had this little program they can use that basically you can size my penis. And not only that, you can lower my heart rate through systems analysis.

All right. That was all designed for these women that worked for analysis companies doing data processing, data programming, for corporations. That had nothing to do with the county jail using it to make money. Okay? Now, I realize they remodeled the jail, built kitchens, and I realize that the penal system does use analysis on the prisoners. But anytime they are going against the will of a prisoner and causing the prisoner pain through heart attacks and stuff like that, they have went too far.

Q. Did you have a heart attack?

A. What I mean by that is there is software out called Megarace (phonetic) put out software form the leverance code of the 1960s. In that is where they are using to where it's a trio-transmitter which is connected to regulate free on in a tube for like organ malfunction which goes way back to Christopher Columbus days. Technology and medicine. They said that's what I have inside my body. How can I prove this? I have no way to prove that except for I can go back and get the books and show you science investigation how it works in the

3

> encyclopedia, which is a higher education than a school will ever give you.
>
> Q. All right. Eddie Thompson. What did he have to do with your false arrest?
>
> A. Well, with all these things going on about being sexually assaulted and while I was asleep they gave me blow jobs, things like that. I am like, *Hey, I don't do men.* So that I considered to be sexual assault and rape. I mean women, fine. But men, no. This adult entertainment in the eighties was all about women. Not men or children.
>
> Q. So Eddie Thompson did what now?
>
> A. Well, it is his jail. He is the captain over his jail. Maybe it wasn't personally him, but he is responsible because the administration is done under him through the jail he had control of. Now, when I complained to him about different things, he kind of laughed it off at first.
>
> Q. You are saying you were sexually assaulted?
>
> A. Yes, ma'am.
>
> Q. But you said you weren't aware of it; you were asleep when it happened?
>
> A. Right. When you lower a man's heart rate, what does that do? That cuts the blood and oxygen to the brain. Somebody could do something like that to you and get through and walk away and you really not have memory of it. It would be like taking Rohypnol. You will get a little glimpse of it, but that's about it as far as the memory in your mind.
>
> Q. You don't personally have any memory of the sexual assaults?
>
> A. Just the glimpse.
>
> Q. And Eddie Thompson is over the jail, so you are suing him?
>
> A. He runs the jail, so his administrators or he allowed that administration to go on in his jail. Right.

[*OH Transcript*, pgs. 11-14].

4

2) **Sheriff Ronnie Pennington**

Q. Ronnie Pennington. What did he do?

A. He is the sheriff of that county. Rankin County. Well, Rankin County, when I had my home and stuff, they also used this world-wide media to be watching me in my home through neighborhood watch, the police officers and other ways. And, therefore, that is invasion of privacy rights of the home. And plus, they displayed indecent material of me taking showers and things like that on the world-wide web, which you can find that out through the ACLU with Donna Rice Hodges. She is the one sent me the letter way back when it started back in the – back when the world-wide web went public back in '91 all the way up to '93. And then by '96, my attorney was John Reid, went against the political reform law and United States Supreme Courts on tort where Howard Campbell was a Supreme Court judge in North Carolina. Of course, I never got over there to get anything out of that, and I was living in Memphis, and I finally found out John Reid was out of Tupelo, Mississippi.

*Id.* at 14.

3) **Lieutenant Robert Andrews**

Q. Lieutenant Robert Andrews. What did he do or not do? Why are you suing him?

A. What did he not do?

Q. Why are you suing him?

A. Because whenever you go filing complaints and trying to talk to these people and they don't get it stopped, what can you do? I mean, I don't really know who all to blame. That's why I said I would like it to be investigated when I wrote and find out what all their positions were or what they all did, because, I mean, this is absurd.

*Id.* at 15.

4) **Lieutenant Jim Spears/Lieutenant Albert Bounds**

Q. What about Lieutenant Jim Spears?

5

A. Lieutenant Jim Spears runs it whenever Andrews ain't there. And then beyond that one you would go with Lieutenant Bounds. I have been in and out of jail. I have been harassed so much in Rankin County it's pathetic. But because the Rankin County Chamber of Commerce also use this, see, where companies in a commerce like this find out somebody that has got kind of highly popular and a lot of people would love to watch him in his home, they turn around and build a audience and make their little web site. Okay. Now if you have got 100,000 people checking your web site out at $7 a piece, what are you going to have? $700,000 a year or more.

*Id.* at 15-16.

### 5) **Deputy Chris Banes**

Q. You sued Officer Bangs?

A. Bangs.

Q. B-A-N-G-S.

A. I don't really remember what his part was, but what are you going to do? I mean, this is-

Q. If you don't have a claim against him, we have to release him from the lawsuit.

A. I understand that.

*Id.* at 17.

### 6) **Deputy Barbara Green**

Q. And Officer Green.

A. Green? She is just about like the rest of them. With this program like I was telling you from the adult entertainment file, which Bill Gates can back up and all that, is to where they had a way where their thought of human-to-human interface of 800 feet, they can actually think of whatever it was they were thinking. I don't know what it is because I never seen the program. But they could size me. And whenever I go to throbbing, of course they get to throb.

6

*Id.* at 17-18.

Plaintiff avers that damages resulting from the alleged incidents amount to "one hundred billion or trillion dollars." [ECF No.1, p. 6]. Defendants have now filed a Motion for Summary Judgment claiming they are entitled to qualified immunity.

**Standard of Review**

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The rule "mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when ... both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*,

7

37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

**Analysis**

Defendants contend they are entitled to qualified immunity from suit. Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions ... as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Courts deciding qualified immunity employ a two-part test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). First, plaintiff "must claim that the defendants committed a constitutional violation under current law." Id. (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999)). Second, plaintiff "must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." Id. "The defendant's acts are to be held to be objectively reasonable unless all reasonable official's in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001). Thus, "[a]n official is eligible for qualified immunity even if the official

violated another's constitutional rights," as long as the conduct was not objectively unreasonable. *Id.*

Plaintiff fails to show Defendants violated his rights and therefore never surpasses the first prong. Plaintiff clearly testified at his omnibus hearing that he is not alleging that any of the Defendants were in any way personally involved in the alleged events. Instead, Plaintiff alleges that these Defendants are liable pursuant to their supervisory positions with the Rankin County Sheriff's Department and/or the Rankin County Detention Facility. However, it is well-settled that "there is no vicarious or respondeat superior liability of supervisors under § 1983." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006). A supervisor can only be found individually liable under § 1983 on the basis of his or her own personal participation in the wrongful conduct, or in cases involving a supervisor, where there is a causal connection between the supervisor's acts and the alleged constitutional violation. *Gilmer v. Trowbridge*, 2009 WL 649692 (S.D. Miss. 2009) (citing *Hinshaw v. Doffer*, 785 F.3d 1260, 1263 (5th Cir. 1986). Thus, a supervisor like Defendants, "may be held liable [under § 1983] ... if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (citation omitted). In this case, Plaintiff is unable to establish a claim of supervisory liability under either method. He has failed to establish that Defendants affirmatively participated in the alleged activities in any way or that Defendants implemented any unconstitutional policies.

Instead, Plaintiff appears to allege that Defendants failed to protect him from being sexually assaulted by another inmate. To establish a failure to protect claim, a

9

prisoner must show that he was "incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to [his] need for protection." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). A prison official acts with deliberate indifference if the official "is aware of an 'excessive risk to inmate ... safety' and disregards that risk." *Longoria v. Texas*, 473 F.3d 586, 592-93 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The deliberate indifference standard applies whether the plaintiff asserts that a supervisor affirmatively participated in acts causing the alleged deprivation, adopted a policy, or failed to train or supervise. *Porter*, 659 F.3d at 446.

Plaintiff is unable to meet this deliberate indifference standard. There is no evidence that Defendants knew or had any reason to know that any sexual misconduct, if any, would occur on this date. Plaintiff claims that an inmate named Michael McLaurance sexually assaulted him at the Rankin County Jail on March 2, 2010. However, Defendants attach the Inmate Roster for that date as Exhibit F to the Motion to Dismiss; the roster shows no such inmate incarcerated in Rankin County during March 2010. ECF No. 53, p. 11]. Without this inmate being incarcerated on this date, it would be impossible for Defendants to have any reason to know that this alleged event would occur. Plaintiff testified he was asleep when the alleged raped occurred, and he has not specific recollection of the event. Further, although Plaintiff alleges in his initial Complaint that the rape was somehow made possible by the implantation of a heart rate device, he has alleged no set of facts establishing that Defendants were in any way involved in the implantation of this device.

Plaintiff has failed to provide any facts showing that Defendants violated his constitutional rights in any way and he is thus unable to satisfy the first prong of qualified immunity analysis.  Accordingly, Defendants are entitled to summary judgment on the basis of qualified immunity.

**Conclusion**

For the reasons discussed herein, the Court finds that Defendants are entitled to summary judgment on the basis of qualified immunity.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment is hereby granted, and the Complaint is dismissed with prejudice.  Final Judgment in favor of all Defendants shall be entered.

SO ORDERED this the 26th day of March, 2013.

/s/Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE